IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICHARD VARGAS,** | : | **CIVIL ACTION** |
| *Plaintiff*, | : | |
| v. | : | No. 18-2936 |
| **ANDREW M. SAUL,**[1] **Acting Commissioner, Social Security Administration,** | : | |
| *Defendant*. | : | |

# ORDER

**AND NOW**, this 18th day of June, 2020, upon consideration of Plaintiff Richard Vargas's Brief in Support of Request for Review (ECF No. 9), Defendant's Response (ECF No. 14), Plaintiff's Reply (ECF No. 15), the Report and Recommendation by United States Magistrate Judge David R. Strawbridge (ECF No. 18), Plaintiff's Objections (ECF No. 19), Defendant's Response to Objections (ECF No. 21), and the administrative record, I find as follows:

**Procedural Background**[2]

1.  On April 24, 2015 and April 27, 2015, respectively, Plaintiff Richard Vargas filed applications for Disability Insurance Benefits and Supplemental Security Income—under Title II of the Social Security Act, 42 U.S.C. §§ 301, et seq.—alleging disability due to various physical and mental impairments.

---

[1] Andrew M. Saul became Commissioner of the Social Security Administration on June 4, 2019 and is, therefore, substituted for Nancy A. Berryhill as Defendant in this suit. See Fed. R. Civ. P. 25(d)(1); 42 U.S.C. § 205(g) (Social Security disability actions "survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office").

[2] In lieu of engaging in a lengthy discussion of the factual background of Plaintiff's medical history, I incorporate by reference the thorough discussion set forth in the Report and Recommendation.

2. The state agency initially denied Plaintiff's application, prompting him to request a hearing before an Administrative Law Judge ("ALJ").

3. Following the administrative hearing on April 20, 2017, where Plaintiff was represented by counsel, the ALJ issued a decision on August 17, 2017, deeming Plaintiff not disabled. The ALJ found that Plaintiff has severe impairments, including a coronary artery disease with the residuals of a myocardial infarction and double coronary bypass surgery, morbid obesity, asthma, major depression, and generalized anxiety disorder, none of which meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ further determined that Plaintiff retains the residual functional capacity ("RFC") to perform light work as defined by 20 C.F.R. § 404.1567(b) and 416.967(b) but is restricted to no more than occasional exposure to fumes, dust, gases, odors, and changes in temperature and humidity. The ALJ also remarked that Plaintiff is limited to (1) simple, routine tasks requiring no more than reasoning level 2, involving occasional contact with the public, coworkers, and supervisors, and (2) no working on assembly lines or in teams with little change in the work setting or work processes. Given these limitations, the ALJ concluded that Plaintiff can perform several jobs existing in significant numbers in the national economy. (R. 16–22.)

4. On May 24, 2018, the Social Security Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner of the Social Security Administration.

5. Plaintiff filed this action on July 12, 2018, challenging the ALJ's decision. The matter was referred to United States Magistrate Judge David R. Strawbridge, who issued a Report and Recommendation ("R&R") on August 30, 2019, recommending that Plaintiff's Request for Review be denied and the decision of the Commissioner be affirmed.

6.     On September 17, 2019, Plaintiff timely filed objections, arguing that Judge Strawbridge erred in recommending that (1) the ALJ's decision is supported by substantial evidence; (2) the ALJ properly evaluated subjective complaints provided by Plaintiff and his wife; (3) there was no conflict between the vocational expert's testimony and the Dictionary of Occupational Titles for jobs that exist in significant numbers for Plaintiff; (4) the ALJ properly considered the impact of Plaintiff's obesity; and (5) the ALJ properly considered Plaintiff's work history.[3]

**Standard of Review**

7.     The court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact." Gilmore v. Barnhart, 356 F. Supp. 2d 509, 511 (E.D. Pa. 2005) (quoting Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001)).

8.     With respect to legal conclusions reached by the Commissioner, the court exercises plenary review. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011). Stated differently, the court reviews the ALJ's application of the law *de novo*. Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 91 (3d Cir. 2007).

9.     Judicial review of the Commissioner's factual conclusions is limited to determining whether "substantial evidence" supports the decision. Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000). "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to

---

[3] Where a United States Magistrate Judge has issued a Report and Recommendation in a social security case and a party makes a timely and specific objection to that Report and Recommendation, the district court is obliged to engage in *de novo* review of only those issues raised on objection. 28 U.S.C. § 636(b)(1); see also Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). For those sections of the Report and Recommendation to which no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes. The court may "accept, reject, or modify, in whole or in part, the findings and recommendations" contained in the report. 28 U.S.C. § 636(b)(1). In the exercise of sound judicial discretion, the court may also rely on the Magistrate Judge's proposed findings and recommendations. See United v. Raddatz, 447 U.S. 667, 676 (1980).

support a conclusion.'" Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 564–65 (1988)). Thus, even if the reviewing court would have decided the case differently, the Commissioner's decision must be affirmed if it is supported by substantial evidence. Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986).

**Plaintiff's Objections**

    A. Whether Judge Strawbridge Erred in Recommending that the ALJ's Decision Was Based on Substantial Evidence

10.    Plaintiff's first objection challenges Judge Strawbridge's finding that the ALJ's disability decision was based on substantial evidence. In the R&R, Judge Strawbridge engaged in a thorough review of the medical evidence regarding Plaintiff's subjectively reported symptoms and concluded that the ALJ's finding regarding those symptoms was well supported by substantial evidence. Plaintiff now contends that this conclusion was in error, reiterating the same arguments already considered and rejected in the R&R.

11.    These arguments fail for several reasons. First, it is well established that "[o]bjections which merely rehash an argument presented to and considered by a magistrate judge are not entitled to *de novo* review." Gray v. Delbiaso, No. 14-4902, 2017 WL 2834361, at *4 (E.D. Pa. June 30, 2017), appeal dismissed 2017 WL 6988717 (3d Cir. 2017); see also Tucker v. PA, 18-201, 2020 WL 1289181, at *1 (E.D. Pa. Mar. 18, 2020). Stated differently, "[w]here objections do not respond to the Magistrate's recommendation, but rather restate conclusory statements from the original petition, the objections should be overruled." Prout v. Giroux, No. 14-3816, 2016 WL 1720414, at *11 (E.D. Pa. Apr. 29, 2016); see also Luckett v. Folino, No. 09-0378, 2010 WL 3812329, at *1 (M.D. Pa. Aug. 18, 2010) (denying objections to R&R because "[e]ach of these objections seeks to re-litigate issues already considered and rejected by [the] Magistrate Judge [ ]."); Morgan v. Astrue, No. 08-2133, 2009 WL 3541001, at *4 (E.D. Pa. 2009) (holding that to re-address objections that were raised to

4

the magistrate judge "would simply duplicate the thorough efforts of the Magistrate Judge and defeat any benefit of judicial efficiency gained by the report and recommendation process.").

12. Second, it is not my role to reweigh the various medical opinions and evidence in the record. See Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190 (3d Cir.1986). Instead, my review is limited to determining if there is substantial evidence to support the ALJ's weighing of those opinions. See id.

13. Plaintiff argues that he is not, in fact, requesting that I reweigh the evidence, but is instead "appropriately requesting remand for the ALJ to weigh the evidence in accordance with the Commissioner's binding Regulations." (Pl.'s Objs. at 6.)

14. Specifically, Plaintiff argues that the ALJ's decision to rely on the opinions from a non-examining state agency physician over the opinions of a consultative examiner, Hua Yang, M.D., and "consistent recommendations in a hospital discharge summary" is contrary to the Social Security regulations, "which provide that opinions from examining sources are generally entitled to more weight than those from non-examining sources." (Id. at 2–3.); 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1) ("Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you.").

15. Plaintiff rests this argument on the allegation that the ALJ provided "nothing more than a conclusory finding rejecting the opinions from Dr. Yang because he believed that those opinions were 'inconsistent with the full longitudinal record.'" (Id. at (citing R. 19).)

16. Plaintiff mischaracterizes the ALJ's findings. The ALJ states:

> In finding the above, the undersigned has accorded little weight to the findings and conclusions of Hua Yang, M.D., who opined that the claimant had a five pound lifting restriction. Overall, this practitioner's conclusions are inconsistent with the full longitudinal record including the claimant's reported improvement after surgical intervention, benign respiratory/cardiovascular examinations, reportedly "mild" asthma, and reported capabilities as discussed above.

5

(R. 19.)  This conclusion, as the ALJ twice notes, is based on the ALJ's thorough discussion of (1) statements made by Plaintiff's own treating and examining physicians, (2) Plaintiff's medical records, and (3) Plaintiff and his wife's own statements, set forth in the preceding paragraphs.  (R. 19 ("In finding the above . . . as discussed above . . . ."); see R. 17–19.)

17. Additionally, unlike Plaintiff's characterization, the ALJ accords only "partial weight" to the findings of the non-examining state agency physician "who opined that the claimant was limited to a 'light' physical exertional capacity with other postural and environmental limitations."  (R. 19.) The ALJ explains that:

> [I]n light of the reported cardiac improvement, benign cardiac/respiratory examinations and reported capabilities discussed above, the undersigned finds this consultant's conclusions as to postural limitations not to be supported.  However, this consultant's exertional and environmental limitations are supported for these reasons and in light of the claimant's obese body, diagnosed condition of asthma and the need for surgical intervention for his cardiac condition.

(Id.)

18. The regulations make clear that consistency with "the record as a whole" is a factor considered by the ALJ in assigning weight to a medical opinion.  20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give that medical opinion.")

19. I concur with Judge Strawbridge's reasoning that the ALJ's decision was supported by substantial evidence.  As noted above, Plaintiff attempts to relitigate arguments that were already before Judge Strawbridge, including that (1) the ALJ failed to consider contradictory medical evidence, (2) there was no evidence to call into question the opinions of the examining consultant, Dr. Yang, (3) certain medical records were not considered by the non-examining state agency physician, and (4) medical evidence relied on by the ALJ is not sufficient to support the finding that Plaintiff can perform light work.  Yet, these arguments simply invite me to reweigh the evidence in the record and reach a different conclusion than the ALJ regarding Plaintiff's health status post-

6

surgery. This is not my role in reviewing the ALJ's decision. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011) (reasoning that reviewing courts "are not permitted to reweigh the evidence or impose their own factual determination.")[4]  Plaintiff's first objection is therefore overruled.

   B. Whether Judge Strawbridge Erred in Recommending that the ALJ Properly Evaluated Plaintiff and His Wife's Subjective Statements

   20.   Plaintiff next objects to Judge Strawbridge's recommendation that the ALJ properly considered Plaintiff and his wife's subjective statements regarding the severity of Plaintiff's symptoms. Plaintiff first argues that evidence of Plaintiff's daily activities is not necessarily evidence of his ability to work. Plaintiff asserts that an individual's daily activities are only one factor to be considered when evaluating whether the individual's statements are supported by the record. He contends that Judge Strawbridge did not identify any other factors that the ALJ properly relied on to discount the statements from Plaintiff and his wife.

   21.   Plaintiff again rehashes arguments made to and rejected by Judge Strawbridge, which undermines my ability to review Plaintiff's request *de novo*. Even assuming that *de novo* review is appropriate, I agree with Judge Strawbridge's reasoning that the ALJ properly considered Plaintiff's statements regarding the severity of his symptoms.

   22.   First, the focus of Plaintiff's arguments are conveniently narrow. Plaintiff contends that Judge Strawbridge did not identify factors, other than daily activity, that were relied on by the ALJ to discount Plaintiff's statements. I disagree. It is clear that a plaintiff's allegations of pain and other subjective symptoms "must be supported by objective medical evidence." Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999); see also 20 C.F.R. § 404.1529(a), (c)(2)–(3) ("In determining

---

[4] Plaintiff's arguments also disregard the well-settled principle that "there is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004).

7

whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[, such as daily activities].").

23. Here, Judge Strawbridge explains that "the ALJ did not hold Plaintiff's daily activities up as the sole evidence in discounting his subjective statements regarding the severity of his symptoms; rather, he considered them in conjunction with other evidence tending to show that Vargas was not as functionally limited as he contended." (R&R at 13.) I find that this explanation is supported by the record. The ALJ cites specific instances where Plaintiff's complaints about his limitations were inconsistent with not only Plaintiff and his wife's own description of his daily activities but also the objective medical evidence of record. (See R. 17–19.)

24. Plaintiff also challenges Judge Strawbridge's recommendation that the ALJ did not err in failing to recognize portions of statements made by Plaintiff's wife because those statements are duplicative of statements made by Plaintiff. Yet, Plaintiff mischaracterizes the R&R. Judge Strawbridge specifically points out the portions of the ALJ's decision that discuss Plaintiff's wife's statements at length and identify the objective medical evidence relied on by the ALJ to discount those statements. (R&R at 13.) The ALJ states:

> [T]he claimant's wife reported that the claimant's impairments affected his ability to lift, squat, bend, walk, sit, climb stairs, complete tasks, and concentrate. She also indicated that the claimant was only able to lift 10 to 15 pounds. . . . The Administrative Law Judge has accorded these conclusions little weight. The claimant's wife is not a generally acceptable medical source pursuant to the regulations. Further, her conclusions as to the claimant's exertional and postural capabilities are inconsistent with the full longitudinal record. In particular, the claimant has experienced improvement after surgical intervention and such conclusions are inconsistent with the reported capabilities discussed above.

(R. 20.)

25. Even if the ALJ failed to identify specific portions of Plaintiff's wife's statements that Judge Strawbridge characterizes as duplicative, it remains that "there is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." Hur, 94 F. App'x 130 at 133.

26. Because I agree with Judge Strawbridge's reasoning regarding the ALJ's treatment of subjective statements in the record, I will overrule Plaintiff's second objection.

C. <u>Whether Judge Strawbridge Erred in Recommending that the ALJ Did Not Err When He Relied on Vocational Expert Testimony That Conflicts with the Dictionary of Occupational Titles</u>

27. Plaintiff's third objection challenges Judge Strawbridge's recommendation that the ALJ did not err in failing to resolve conflicts between the vocational expert's testimony and the <u>Dictionary of Occupational Titles</u> ("DOT") regarding "Plaintiff's ability to perform work as a car dealership investigator, but hold that this error was harmless because there is no conflict between the DOT and VE testimony on the other jobs found for Mr. Vargas." (Pl.'s Objs. at 8.)

28. There is no dispute that the vocational expert's testimony conflicts with the DOT as to the position of car dealership investigator, which requires a reasoning level of 4, when the ALJ had limited Plaintiff to jobs requiring a reasoning level of 2. Judge Strawbridge, however, recommends that substantial evidence supports the ALJ's determination that Plaintiff could perform work as a ticketer/marker and pre-assembler of circuit boards.

29. As to the job of ticketer/marker, Plaintiff contends that there is no evidence of how many of these jobs exist in the local or regional economy. At Step Five of the sequential evaluation process set forth in 20 C.F.R. § 404.1520(a), the ALJ must determine whether a claimant's impairments prevent him from performing work in the national economy considering his RFC.

30. Under the regulations, work exists in the national economy when "it exists in significant numbers either in the region where you live or in several other regions of the country." 20 C.F.R. §§ 404.1566(a) and 416.966(a). "It does not matter whether . . . (1) [w]ork exists in the

immediate area in which you live; (2) [a] specific job vacancy exists for you; or (3) [y]ou would be hired if you applied for work. . . . Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications." 20 C.F.R. §§ 404.1566(a)(1)–(3),(b) and 416.966(a)(1)-(3),(b).

31. Although Plaintiff correctly cites to 20 C.F.R. §§ 404.1566 and 416.966, Plaintiff mischaracterizes the regulations. He argues that the vocational expert did not provide any evidence of "whether the job identified here exists in significant numbers in the 'region' where Plaintiff lives or in 'several other regions.'" (Pl.'s Objs., ECF No. 19, at 9.) This argument misquotes 20 C.F.R. §§ 404.1566(a) and 416.966(a), which clearly states that work in the national economy exists when the job exists in significant numbers either in the region where the claimant lives or in "several other regions of the country." The ALJ's decision recognizes that there are 165,000 ticketer/marker jobs in the national economy. Plaintiff does not dispute this number and identifies no aspect of the job that conflicts with his RFC.

32. Because I agree with Judge Strawbridge that substantial evidence supports the ALJ's determination that Plaintiff could perform work as a ticketer/marker, I will overrule Plaintiff's third objection.[5]

---

[5] Plaintiff also objects to Judge Strawbridge's recommendation that substantial evidence supports the ALJ's determination that Plaintiff could also perform work as a pre-assembler of circuit boards because the ALJ lists a DOT classification number for this job that does not exist. Because the regulation requires evidence of a significant number of jobs in one or more occupations in order to meet the burden of Step Five, I need not reach the question of whether Plaintiff could also perform work as a pre-assembler of circuit boards, when I have already determined that there is substantial evidence regarding the job of ticketer/marker.
   However, I agree with Judge Strawbridge that the ALJ made a typographical error in listing the DOT classification number for a pre-assembler of circuit boards as 729.687-038, instead of 726.687-038. DOT classification number 726.687-038 corresponds with a job title for "Preassembler, Printed Circuit Board" and requires a reasoning level of 2. To point out an obvious scrivener's error like listing a "9" instead of a "6" is not improperly reweighing the evidence relied on by the ALJ as Plaintiff contends. The ALJ's decision recognizes that there are 225,000 pre-assembler of circuit boards jobs nationally. Plaintiff does not dispute this number and identifies no aspect of the job that conflicts with his RFC. Therefore, I find that substantial evidence supports the ALJ's finding that Plaintiff can perform the job of pre-assembler of circuit boards.

D. <u>Whether Judge Strawbridge Erred in Recommending that the ALJ Properly Evaluated the Effect of Plaintiff's Obesity</u>

33. Plaintiff argues in his fourth objection that Judge Strawbridge erred by recommending that the ALJ properly considered Plaintiff's obesity because "the ALJ identified it as a severe impairment at [Step Two] and because the ALJ identified substantial evidence supporting the light RFC as already discussed earlier in the R&R."  (Pl.'s Objs., ECF No 19, at 9.)

34. First, I note that Plaintiff's objection raises the same arguments and the same evidence already considered and rejected by Judge Strawbridge.  Although I could summarily overrule Plaintiff's objection on this basis, I will briefly discuss it below.

35. Plaintiff contends that the record contains numerous references to Plaintiff's obesity impacting his functioning that were not considered in the ALJ's decision.  Plaintiff identifies a note from William J. Markman, M.D., who states that Plaintiff "probably [has] early arthritis of the lumbosacral spine aggravated also by his being overweight."  (R. 602.)  There is no evidence in the record that Plaintiff sought treatment for his back beyond a single visit with Dr. Markman.  Plaintiff also points to notes from Plaintiff's treating cardiologist, Ted Parris, M.D., in which Dr. Parris identified Plaintiff's Body Mass Index and recommended that he would benefit from weight loss; Dr. Parris also wrote, "[H]opefully [Plaintiff] can achieve significant weight loss which is critical on multiple levels given his comorbidities."  (R. 570.)

36. I disagree with Plaintiff that these arguments are a basis for remand.  It is clear that the ALJ considered Plaintiff's obesity in deeming Plaintiff not disabled.  The ALJ, at Step Two of the analysis under 20 C.F.R. § 404.1520(a), found Plaintiff's morbid obesity to be a severe impairment.  (R. 14.)  The ALJ also considered all of Plaintiff's impairments, including his severe impairment of

morbid obesity, at Step Three, in finding that Plaintiff did not have an impairment or combination of impairments that meets the necessary level of severity under the regulations. (R. 15–16.)

37. At Step Four, the ALJ explicitly identified Plaintiff's obesity as a basis for finding that Plaintiff had certain physical limitations in the RFC to perform light work. (R. 16–17 ("Overall, in light of the claimant's cardiovascular conditions, asthma, and obesity, the undersigned finds the above physical limitations in the Residual Functional Capacity.").) For instance, the ALJ identified that due to Plaintiff's impairments, including his obesity, he could perform light work "except no more than occasional exposure to fumes, dust, gases, odors, and changes in temperature and humidity." (R. 16.) The ALJ also found that Plaintiff is "limited to simple, routine tasks requiring no more than reasoning level 2, involving occasional contact with the public, coworkers, and supervisors" and "limited to no working on assembly lines or in teams with little change in the work setting or work processes." (Id.)

38. The ALJ concluded, however, that the record did not support the presence of greater limitations than those already identified. As discussed above, the ALJ relies on statements made by Plaintiff's own treating and examining physicians, Plaintiff's medical records, and Plaintiff and his wife's own statements to support that Plaintiff's health status had improved post-surgery. (See R. 17–19.)

39. Plaintiff identifies notes from Dr. Parris, Plaintiff's cardiologist, that Plaintiff characterizes as finding the impact of his obesity to be significant on his functioning. Yet, the ALJ relies on numerous contemporaneous and subsequent statements by Dr. Parris that Plaintiff was "active," "asymptomatic," "doing well," "stable," "free of angina or symptoms of congestive heart failure," and had relatively normal cardiovascular and respiratory function. These statements of Plaintiff's treating physician, in conjunction with other evidence in the record discussed above, is

substantial evidence in support of Plaintiff's obesity not requiring greater limitations than those identified by the ALJ.[6]

40. As previously mentioned, the ALJ is not required to discuss every tidbit of evidence in the record. Because I concur with Judge Strawbridge that substantial evidence exists regarding the ALJ's evaluation of Plaintiff's obesity, it is not my role to reweigh the effect of Plaintiff's visit to Dr. Markman on his request for benefits. I will note that, based on the record, Plaintiff visited Dr. Markman only once, although he was scheduled for a follow-up appointment and was recommended physical therapy. Moreover, although Dr. Markman wrote that Plaintiff probably had early arthritis of the lumbosacral spine aggravated also by his being overweight, Dr. Markman also noted that Plaintiff was "[n]eurologically . . . intact in the lower extremities," showed "some degenerative changes but surprisingly the disc spaces looked good," and the "[x]-ray of the pelvis showed the hips to be okay." (R. 602.)

41. Apart from stating generally that the ALJ failed to consider the effect of his obesity on his functioning or on his other impairments, I agree with Judge Strawbridge that Plaintiff has failed to show evidence on the record linking his obesity to any functional limitations. As the United States Court of Appeals for the Third Circuit has explained, that type of "generalized response" is not enough to require remand. See Rutherford v. Barnhart, 399 F.3d 546, 552–53 (3d Cir. 2005) (explaining that a generalized assertion that a claimant's weight makes it more difficult for her to stand, walk, and manipulate her hands and fingers, is not enough to require remand).[7]

---

[6] Plaintiff also testified at the administrative hearing that he had difficulty walking, standing, and sitting for long periods of time, but Plaintiff attributed those limitations to his diabetes, not his obesity.

[7] Plaintiff's reliance on Eskridge v. Astrue, a single District of Delaware case, is misplaced. 569 F. Supp. 2d 424 (D. Del. 2008). In Eskridge, the court remanded to the ALJ for consideration of whether plaintiff was, in fact, obese, and, if so, "how consideration of this impairment affects the other steps of the disability determination sequence." Id. at 439. The court found that the ALJ did not explain "if or how plaintiff's alleged obesity figured into her determination at any point of the five step process." Id. Here, unlike Eskridge, the ALJ found Plaintiff's obesity to be a severe impairment and considered his obesity throughout the five step

13

42. For these reasons, I will overrule Plaintiff's fourth objection.

E. <u>Whether Judge Strawbridge Erred in Recommending that the ALJ Properly Considered Plaintiff's Work History</u>

43. Finally, Plaintiff objects to Judge Strawbridge's recommendation that the ALJ properly considered Plaintiff's work history. In support of this objection, Plaintiff relies only on arguments already raised regarding the ALJ's evaluation of Plaintiff's subjective statements.

44. As Judge Strawbridge points out, work history is one of many factors that an ALJ considers when evaluating the credibility of a claimant's subjective statement. <u>See</u> 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Yet, an ALJ is not required to afford more credibility to a plaintiff with an allegedly "excellent" work history, especially when the plaintiff's subjective statements are not supported by the record.

45. Here, as discussed above, there is substantial, objective medical evidence in the record that undermines Plaintiff's subjective statements. Therefore, I agree with Judge Strawbridge that Plaintiff's employment record provides no basis to set aside the ALJ's credibility assessment.

**WHEREFORE**, it is hereby **ORDERED** that:

1. The Report and Recommendation (ECF No. 18) is **APPROVED and ADOPTED**;
2. Plaintiff's Request for Review is **DENIED**;
3. Judgment is **ENTERED** in favor of **DEFENDANT**;
4. The Clerk of Court shall mark this case **CLOSED**.

**BY THE COURT:**

 <u>/s/ Mitchell S. Goldberg</u>
 **MITCHELL S. GOLDBERG, J.**

---

disability analysis. Therefore, I am unpersuaded that <u>Eskridge</u> undermines Judge Strawbridge's recommendation or the ALJ's findings.